UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


WADE N. SCOTT,

                    Petitioner,

                                              CASE NO. 2:08-CV-11558
        v.                                    JUDGE LAWRENCE P. ZATKOFF
                                              MAGISTRATE JUDGE PAUL J. KOMIVES

CATHERINE S. BAUMAN,

                    Respondent.[1]

_____/


## REPORT AND RECOMMENDATION

*Table of Contents*

I.      RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
II.     REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
        A.     *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
        B.     *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
        C.     *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
        D.     *Identification Related Claims (Claims I & II)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
               1.      *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
               2.      *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
        E.     *Other Acts Evidence (Claim III)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
               1.      *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
               2.      *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
        F.     *Sufficiency of the Evidence (Claim IV)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
               1.      *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
               2.      *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
        G.     *Recommendation Regarding Certificate of Appealability* . . . . . . . . . . . . . . . . . . . . . . . . 20
               1.      *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
               2.      *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
        H.     *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
III.    NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

                    *       *       *       *       *

I.      RECOMMENDATION: The Court should deny petitioner's application for the writ of

habeas corpus.  If the Court accepts this recommendation, the Court should also deny petitioner a

_____

[1]By Order entered this date, Catherine S. Bauman has been substituted in place of Cindy S. Curtin as the proper respondent in this action.

certificate of appealability.

II.     REPORT:

A.     *Procedural History*

1.     Petitioner Wade N. Scott is a state prisoner, currently confined at the Alger Maximum Correctional Facility in Munising, Michigan.

2.     On April 8, 2005, petitioner was convicted of first degree murder, MICH. COMP. LAWS § 750.316; possession of a firearm by a felon, MICH. COMP. LAWS § 750.224f; and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, following a jury trial in the Wayne County Circuit Court. On April 26, 2005, he was sentenced to mandatory term of life imprisonment without possibility of parole on the murder conviction, a concurrent term of 5-20 years' imprisonment on the felon in possession conviction, and a mandatory consecutive term of two years' imprisonment on the felony-firearm conviction.

3.     Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

I.     MR. SCOTT'S MULTIPLE EXPOSURES TO WITNESSES DURING THE NUMEROUS ADJOURNED PRELIMINARY EXAMINATIONS CONSTITUTED AN UNDULY SUGGESTIVE IDENTIFICATION PROCEDURE.

II.     DEFENSE COUNSEL'S FAILURE TO REQUEST A HEARING TO DETERMINE IF McGEE HAD AN INDEPENDENT BASIS FOR AN IDENTIFICATION AND FAILURE TO MOVE TO SUPPRESS THE OTHER IDENTIFICATIONS AS UNDULY SUGGESTIVE CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL.

III.     DEFENDANT WAS DENIED ANY POSSIBILITY OF A FAIR TRIAL BY THE ERRONEOUS ADMISSION OF TESTIMONY REGARDING A HIGHLY INFLAMMATORY PRIOR INCIDENT WHERE MR. SCOTT HAD A FIREARM UNDER MRE 404B WHEN THERE WAS NO LOGICAL RATIONALE FOR ADMISSION OF THIS EVIDENCE AND

THE PREJUDICE OVERWHELMINGLY OUTWEIGHED THE PROBATIVE VALUE. US CONST AM XIV; MICH CONST ART I, SEC 17.

IV.     THE TRIAL COURT REVERSIBLY ERRED IN DENYING THE DEFENSE MOTION FOR A DIRECTED VERDICT BECAUSE THE PROSECUTION FAILED TO PRODUCE LEGALLY SUFFICIENT EVIDENCE OF DEFENDANT'S GUILT BEYOND A REASONABLE DOUBT IN TERMS OF SUFFICIENT EVIDENCE OF THE ESSENTIAL ELEMENT OF PREMEDITATION.

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence. *See People v. Scott*, No. 262671, 2006 WL 3374956 (Mich. Ct. App. Nov. 21, 2006) (per curiam).

4.     Petitioner, proceeding *pro se*, sought leave to appeal these issues to the Michigan Supreme Court. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Scott*, 477 Mich. 1114, 729 N.W.2d 867 (2007).

5.     Petitioner, through counsel, filed the instant application for a writ of habeas corpus on April 11, 2008. As grounds for the writ of habeas corpus, he raises the four claims that he raised in the state courts.

6.     Respondent filed her answer on October 16, 2008. She contends that petitioner's first claim is barred by petitioner's procedural default in the state courts, and that all of the claims are without merit.

B.     *Factual Background Underlying Petitioner's Conviction*

Petitioner's conviction arises from the shooting death of Anthony Kelly in the early morning hours of May 1, 2004, outside the Tippin Inn Lounge. The principle issue at trial was the identity of the perpetrator. The evidence adduced at trial was accurately summarized in the prosecutor's brief on petitioner's direct appeal:

Jakiria McGee was standing outside the Tippin Inn Lounge a few minutes

after the bar closed that night. She spoke with the victim, who was sitting in the passenger seat of a car parked in front of the bar. After talking with the victim for five or ten minutes, McGee spoke with defendant, who was also standing outside the bar. She did not know defendant's name and had not seen him before that night. McGee stood next to defendant for "a good ten minutes." She asked him about a scratch on his neck that was bleeding, but he did not reply.

McGee testified that the victim threw him a cigarette out the car window as the car driven by "Kennard" pulled away from the curb. The cigarette landed in the street in front of defendant and McGee. Defendant then yelled at the victim. When the victim did not respond, defendant pulled a handgun out of the front of his pants. McGee thought that the gun was silver. Defendant fired five or six shots toward the victim, and the victim fell to the left. Defendant then ran away as the car drove off in a different direction. McGee saw the car again later that night at the hospital.

Antwjaun White and Marc Cowans likewise saw the shooting. Both men were working as security guards at the Lounge that night. White was standing outside the front door as the bar was closing when he saw defendant walk up to the bar. He saw McGee talking to defendant, and saw two regular patrons sitting in a four-door car parked on the street. As the car backed out, the passenger flicked a cigarette out the window. Defendant then said "Do you think that shit is funny?" When the passenger raised his hands and smiled, defendant pulled out a gun and fired at the passenger. The gun appeared to be a chrome ".357 Magnum." The car stopped in the street before leaving the area.

Marc Cowans cleared people out of he vestibule of the Lounge before talking to the victim for five minutes as the victim stood near a friend's car. The victim and his friend got into the car, with the victim seated in the passenger seat. The victim then flicked his cigarette out of the car as the car backed onto the street. The cigarette landed near the curb.

Defendant was standing three or four feet in front of Cowans when the victim flicked the cigarette. Cowans remembered defendant because Cowans had searched him when he entered the Lounge earlier that night. Cowans saw defendant lift up his shirt and pull out what appeared to be a .357 chrome handgun. Defendant fired six shots directly at the car in which the victim was sitting. Defendant then walked up to the car and looked inside before running northbound on the sidewalk. The car drove away, but Cowans saw it again later that night at the hospital.

Officer Serina Kelly and her partner responded to a report of shots fired at the Tippin Inn Lounge. After speaking to someone at the scene, they went to St. Johns Hospital. While there, Officer Kelly spoke to McGee, White, Cowans, and Kennard Minor. She did not take formal statements from the witnesses. In her written report, she described the shooter as 5'0" tall, weighing 180 lbs., and having medium complexion.

Cowans described the shooter to the police as a 5'9", 180 lbs. man with medium complexion who was wearing blue jeans and a long white T-shirt. He believed that the shooter had a tattoo on the right side of his neck, and said that the shooter had facial hair and needed a hair cut. Cowans never viewed a lineup, and

acknowledged that he saw defendant at 36th District Court. Cowans also acknowledged that defendant "could be" a lot taller than 5'9". With regard to the tattoo, he said that he "believed that it was like a scar at that time" but that he "was not sure because it was a quick moment of look."

McGee described the shooter to the police as a slim Black male, between twenty and twenty-three years old, who stood 5'9" tall, had short hair, and was clean shaven. At trial, she explained that she was 5'5" or 5'6" tall and admitted that defendant was "a lot taller" than her. She admitted that she could have been mistaken about defendant's height. McGee acknowledged that she never viewed a "live lineup" and that she had seen defendant three or four times at 36th District Court.

White described the shooter as between 5'10" and 6' tall, with medium complexion, a "one-length haircut," and a goatee. Although White had not seen defendant before that night, he told the police that he could identify him. White was never contacted by the police and requested to view a lineup. White acknowledged that he saw defendant two or three times at 36th District Court.

An evidence technician went to the Tippin Inn Lounge on May 1st and canvassed the area, but found nothing. After reviewing the police reports, Officer Kurtis Staples went to the Lounge that same day and obtained the video recorded by a camera located outside of the bar. Officer Staples did not conduct any live lineups.

On August 4, 2004, Deborah Harper made a statement to the police in which she described the shooter as a Black male in his early 30s who stood 5'8" or 5'9" tall and had a medium build. She said that he had a medium brown complexion, a low fade haircut, and a thin mustache. Harper described the gun as "silver and flat, like a semi-automatic handgun." Harper was never asked to view a live lineup.

Officer Staples sought a warrant for defendant's arrest in August of 2004. Once the charges had been authorized, he located defendant. He conducted no lineups after defendant's arraignment in September of 2004.

At trial, the parties stipulated that if Edward Howard was called to testify he would say that he had contact with defendant on May 11, 2004, and saw him with a ".357 nickel-plated revolver." The parties also stipulated that defendant had a prior conviction and had not met the eligibility requirements to have his gun rights restored.

Pl.-Appellee's Br. on App., in *People v. Scott*, No. 262671 (Mich. Ct. App.), at 4-7 (citations to trial transcript omitted).

C.    *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No.

104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or

erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.    *Identification Related Claims (Claims I & II)*

In his first two claims, petitioner challenges his in-court identification by McGee, Cowans, and White. In his first claim, he contends that these identifications were based upon impermissibly suggestive pre-trial observation of him as the defendant during the preliminary proceedings. Petitioner also argues that McGee's in-court identification was tainted by an impermissibly suggestive pretrial photographic lineup, and that there was no independent basis for the reliability of her in-court identification. In his second claim, petitioner contends that counsel was ineffective for failing to request a hearing regarding the independent basis for McGee's in-court identification, and for failing to move to suppress all of the identifications. The Court should conclude that petitioner is not entitled to habeas relief on these claims.[2]

1.     *Clearly Established Law*

A pre-trial identification procedure violates the Constitution if "the confrontation conducted . . . was so unnecessarily suggestive and conducive to irreparable mistaken identification that [the defendant] was denied due process of law." *Stovall v. Denno*, 388 U.S. 293, 301-02 (1967). Similarly, a subsequent in-court identification following an impermissibly suggestive pre-trial identification is unconstitutional if the pre-trial "identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968). *See generally*, *Neil v. Biggers*, 409 U.S. 188, 197-98 (1972). A suggestive line-up alone, however, does nor require exclusion of identification evidence. "The admission of testimony concerning a suggestive and unnecessary identification procedure does

---

[2]Respondent contends that petitioner's substantive identification claim is barred by petitioner's procedural default because he did not object to the identifications at trial. However, because petitioner contends that counsel was ineffective for failing to move to suppress the identifications, and because counsel's ineffectiveness, if established, may constitute cause to excuse petitioner's procedural default, it is necessary to consider the substantive identification claim on the merits.

not violate due process so long as the identification possesses sufficient aspects of reliability." *Manson v. Brathwaite*, 432 U.S. 98, 106 (1977). Thus, the central question in a case where the pre-trial identification procedure is impermissibly suggestive is "whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." *Biggers*, 409 U.S. at 199; *accord Manson*, 432 U.S. at 114. The factors relevant to this "totality of the circumstances" analysis include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Biggers*, 409 U.S. at 199-200; *accord Manson*, 432 U.S. at 114.

Thus, a court must "follow[] a two-step analysis in determining whether an identification is admissible." *United States v. Crozier*, 259 F.3d 503, 510 (6th Cir. 2001). First, the court must "consider whether the identification procedure was suggestive." *Id.* If it was not, the "identification testimony is generally admissible without further inquiry," and any question as to the reliability of the identification "goes to the weight of the evidence, not its admissibility." *United States v. Maldonado-Rivera*, 922 F.2d 934, 973 (2d Cir. 1990). If, on the other hand, the procedure was suggestive, the court must "then determine whether, under the totality of the circumstances, the identification was nonetheless reliable and therefore admissible." *Crozier*, 259 F.3d at 510.

With respect to petitioner's ineffective assistance of counsel claim, the Sixth Amendment right to counsel and the corollary right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that

"counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two components are mixed questions of law and fact. *See id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*

With respect to the performance prong of the inquiry, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id*. at 689; *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695.

2.    *Analysis*

Petitioner contends that the identifications made by McGee, Cowans, and White were based on their impermissibly suggestive pretrial viewings of petitioner at the preliminary proceedings in the case. After correctly citing the factors relevant to determining the admissibility of the witnesses' identifications, the Michigan Court of Appeals rejected petitioner's claim. The court reasoned that

although each witness admittedly saw petitioner in court three or four times, "all three witnesses also had ample opportunity to observe defendant outside the club before the shooting." *See Scott*, 2006 WL 3374956, at *2, slip op. at 2.  Specifically, the court noted that McGee "testified that she stood next to defendant for at least 10 minutes before the shooting, and spoke to him once, asking him about a scratch on his neck which was bleeding." *Id*. at n.1.  Further, the court rejected petitioner's argument that the witnesses' observations were affected by the darkness of the night and the effects of alcohol, noting that McGee testified that she had two drinks between 11:30 p.m. and 2:00 a.m. and that White and Cowans both testified that they had nothing to drink that evening. *See id*. at *2, slip op. at 2 & n.2.  The court also noted that "all three were certain that defendant was the shooter, despite the discrepancies in the descriptions they initially provided," *id*., and that in any event the differences in descriptions were only slight. *See id*. at n.3 (noting that McGee and Cowans estimated the shooter's height as 5' 9" and White as 5' 10", White and Cowans described the shooter as "medium" complected while McGee described him only as a "Black male," although there was some discrepancy regarding the length of the shooter's hair and the presence of facial hair).  The court of appeals explained: "Given the totality of the circumstances here, noting that the descriptions given were not as diverse as defendant suggests on appeal, and particularly noting the certainty of all three eyewitnesses that defendant was the shooter, we conclude that the opportunities the witnesses had to see defendant before trial did not create a substantial likelihood of misidentification." *Id*. at *2, slip op. at 2-3.  The Court should conclude that this determination was reasonable.

Here, there was substantial evidence which supported the reliability of the witnesses' identifications notwithstanding their viewing of petitioner at the preliminary proceedings in the case. Each witness testified to being certain of his or her identification. *See* Trial Tr., Vol. II, at 28, 45,

53, 69-70. McGee in particular testified that she talked to petitioner, asking him about a scratch on his neck, and that she stood next to him for about ten minutes, including the time when he fired the shots. *See id*. at 21-26, 44. White corroborated that McGee was standing next to petitioner. *See id*. at 60-61. The witnesses' testimony concerning the events leading to the shooting were remarkably consistent, as where their descriptions of the gun used by petitioner. *See id*. at 25 (McGee: silver handgun); 52 (White: chrome .357); 71-72 (Cowans: chrome .357). In light of the witnesses' insistence on their identifications, opportunity to observe petitioner, and consistency of testimony of the events, the Michigan Court of Appeals's conclusion that the identifications bore adequate indicia of reliability to be admissible was not an unreasonable application of clearly established law.

With respect to McGee, petitioner also claims that her in-court identification was tainted by an impermissibly suggestive pre-trial photographic line-up which had been excluded by the trial court, and that the court erred in failing to take evidence regarding the reliability of her subsequent in-court identification. This claim relating to McGee specifically fails, however, because petitioner has not shown that she was subjected to an impermissibly suggestive pre-trial photographic line-up. Petitioner did not seek to suppress McGee's line-up identification on the basis that the procedures employed were impermissibly suggestive. Rather, petitioner argued only that the line-up should be suppressed because counsel was not present at the photographic line-up, *see* Mot. Hr'g Tr., dated 3/24/05, at 5-8; Trial Tr., Vol. I, at 7-24, and the trial court suppressed the photographic line-up identification on this basis, *see id*. at 72. At no point did petitioner argue or the court find that the line-up itself was impermissibly suggestive. Petitioner's entitlement to suppression of the identification was not based on the violation of any constitutional right. *See United States v. Ash*, 413 U.S. 300, 321 (1973) (distinguishing between photographic and corporeal line-ups, and

declining to extend the Sixth Amendment right of counsel to photographic line-ups, holding that "the Sixth Amendment does not grant the right to counsel at photographic displays conducted by the Government for the purpose of allowing a witness to attempt an identification of the offender."); *see also*, *Moore v. Illinois*, 434 U.S. 220, 227 n.3 (1977). Petitioner's entitlement to suppression of the identification arose from *People v. Franklin Anderson*, 389 Mich. 155, 187, 205 N.W.2d 461, 476 (1973) and *People v. James Anderson*, 391 Mich. 419, 422, 216 N.W.2d 780, 781 (1974), cases in which the Michigan Supreme Court held, as a matter of its supervisory powers, that a defendant is entitled to counsel at a photographic line-up.[3] The absence of counsel at the photographic lineup, by itself, neither violated petitioner's state or federal constitutional rights nor raises an issue as to the suggestiveness of the procedures employed by the police in conducting the line-up. And petitioner makes no argument here that the photographic line-up was impermissibly suggestive, which is all that matters for purposes of determining the admissibility of McGee's subsequent in-court identification. Because of this, and because there were independent indicia of reliability with respect to McGee's in-court identification, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

Further, because petitioner cannot show that the in-court identifications were inadmissible

---

[3]Indeed, it is questionable whether the two *Anderson* cases remain good law. In *People v. Hickman*, 470 Mich. 602, 684 N.W.2d 267 (2004), the court overruled *Franklin Anderson*, holding that its expansion of the right to counsel to lineups preceding the initiating of criminal proceedings was an unwarranted exercise of the court's supervisory power which contradicted the language of both the state and federal constitutions. *See Mattox v. Davis*, 549 F. Supp. 2d 877, 930 (W.D. Mich. 2008) Although the court focused on the time when counsel attaches and did not explicitly overrule *James Anderson*, it is difficult to view the right to counsel at a photographic array surviving *Hickman*, in light of that decision's focus on the contours of the Sixth Amendment right to counsel at a line-up explicated by the United States Supreme Court, and its repeated holding that the "right to counsel attaches *only* to *corporeal* identifications conducted at or after the initiation of adversarial criminal proceedings." *Hickman*, 470 Mich. at 603, 611, 684 N.W.2d at 268, 272 (emphasis added).

by virtue of the allegedly suggestive pre-trial identification procedures, any objection by counsel would have been futile. Counsel cannot be deemed ineffective for failing to raise a meritless objection. *See Bradley v. Birkett*, 192 Fed. Appx. 468, 475 (6th Cir. 2006); *Anderson v. Goeke*, 44 F.3d 675, 680 (8th Cir. 1995); *Burnett v. Collins*, 982 F.2d 922, 929 (5th Cir. 1993)

Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on his identification and ineffective assistance of counsel claims.

E.      *Other Acts Evidence (Claim III)*

Petitioner next contends that he was denied a fair trial by the introduction of evidence, through a stipulation as to the purported testimony of Edward Howard, that petitioner possessed a "nickel-plated, .357 revolver" ten days after the murder. *See* Trial Tr., Vol. II, at 100-01. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.      *Clearly Established Law*

It is well established that habeas corpus is not available to remedy a state court's error in the application of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990) (a federal court on habeas review "ha[s] no authority to review a state's application of its own laws."). Thus, unless a violation of a state's evidentiary rule results in the denial of fundamental fairness, an issue concerning the admissibility of evidence does not rise to the level of a constitutional magnitude. *See Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988); *Davis v. Jabe*, 824 F.2d 483, 487 (6th Cir. 1987). "[A] federal habeas court has nothing whatsoever to do with reviewing a state court ruling on the admissibility of evidence under state law. State evidentiary law simply has no

effect on [a court's] review of the constitutionality of a trial, unless it is asserted that the state law itself violates the Constitution." *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993). As the Sixth Circuit has noted, "[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994).

In short, "[o]nly when the evidentiary ruling impinges on a specific constitutional protection or is so prejudicial that it amounts to a denial of due process may a federal court grant a habeas corpus remedy." *Barrett v. Acevedo*, 169 F.3d 1155, 1163 (8th Cir. 1999); *see also*, *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001). Where a specific constitutional right–such as the right to confront witnesses or to present a defense–is not implicated, federal habeas relief is available only if the allegedly erroneously admitted evidence "is almost totally unreliable and . . . the factfinder and the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings." *Barefoot v. Estelle*, 463 U.S. 880, 899 (1983).

2.      *Analysis*

Petitioner contends that he was denied a fair trial by the introduction of evidence relating his possession of a handgun after the murder. As noted above, the issue here is not whether this evidence was properly admitted under the Michigan Rules of Evidence, but rather whether petitioner was denied a fair trial by the introduction of this evidence. This being the case, petitioner is not entitled to habeas relief even if the evidence was not properly admitted under Rule 404(b). Both the Supreme Court and the Sixth Circuit have repeatedly held that a defendant is not denied a fair trial by the admission of prior bad acts evidence which is relevant in the defendant's trial. *See Estelle*,

502 U.S. at 69-70; *Dowling v. United States*, 493 U.S. 342, 353-54 (1990); *Coleman v. Mitchell*, 268 F.3d 417, 439-40 (6th Cir. 2001); *Pennington v. Lazaroff*, 13 Fed. Appx. 228, 232 (6th Cir. 2001) (per curiam) (unpublished); *Manning v. Rose*, 507 F.2d 889, 893-95 (6th Cir. 1974). Here, as explained by the Michigan Court of Appeals, the evidence was relevant for the proper purpose of establishing petitioner's identity. *See Scott*, 2006 WL 3374956, at *4, slip op. at 4-5. Petitioner's possession of a gun matching the witnesses' descriptions of the gun used in the murder corroborated their identification testimony, making the evidence relevant to establish petitioner's identity, a recognized proper purpose of other acts evidence under Rule 404(b).[4] Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

F.      *Sufficiency of the Evidence (Claim IV)*

Finally, petitioner contends that the prosecution presented insufficient evidence to prove his guilt beyond a reasonable doubt. Specifically, he contends that the prosecution presented insufficient evidence to support a finding of guilt on the premeditation element of first degree murder. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.      *Clearly Established Law*

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the

---

[4]Attempting to heighten the prejudicial nature of this evidence, petitioner argues that "the extensive testimony about the 'similar acts' had a profound effect on the jury;" that "[b]asically [sic], only the first day included testimony regarding the charged offense. Comprising the last days of trial was the other act evidence;" and that "[t]his was a trial predominantly focused on other acts evidence." Pet'r's Br., at 29. These assertions are contradicted by the record. The testimony at trial occurred only on one day. The witnesses consisted of the three eyewitnesses, the officer who responded to the scene, the evidence technician who processed the scene, and the officer in charge of the investigation. None of these witnesses offered any testimony regarding petitioner's subsequent possession of a gun. That testimony came only through the stipulation as to what Howard would have testified. Thus, contrary to petitioner's argument this was not a case in which the other acts evidence predominated.

crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). Under the pre-AEDPA standard for habeas review of sufficiency of the evidence challenges, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Reviewing courts must view the evidence, draw inferences, and resolve conflicting inferences from the record in favor of the prosecution. *See Neal v. Morris*, 972 F.2d 675, 678 (6th Cir. 1992). In determining the sufficiency of the evidence, the court must give circumstantial evidence the same weight as direct evidence. *See United States v. Farley*, 2 F.3d 645, 650 (6th Cir. 1993).

However, under the amended version § 2254(d)(1) a federal habeas court must apply a more deferential standard of review of the state court decision. Thus, the question here is whether the Michigan Court of Appeals's application of the *Jackson* standard was reasonable. *See Gomez v. Acevedo*, 106 F.3d 192, 198-200 (7th Cir. 1997), *vacated on other grounds sub nom. Gomez v. DeTella*, 522 U.S. 801 (1998); *Restrepo v. DiPaolo*, 1 F. Supp. 2d 103, 106 (D. Mass 1998).

While a challenge to the sufficiency of the evidence on an established element of an offense raises a federal constitutional claim cognizable in a habeas corpus proceeding, *see Jackson*, 443 U.S. at 324, "[t]he applicability of the reasonable doubt standard . . . has always been dependent on how a State defines the offense that is charged in any given case." *Patterson v. New York*, 432 U.S. 197, 211 n.12 (1977); *see also*, *Jackson*, 443 U.S. at 324 n.16; *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). Thus, "[a] federal court must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999). Accordingly, it is necessary to examine the elements of murder under Michigan law.

Under Michigan law, the common law crime of murder is defined as second degree murder, and is punishable by up to life imprisonment. *See* MICH. COMP. LAWS § 750.317. To establish second degree murder, the prosecution must show that the defendant killed a human being with malice aforethought. In order to show malice aforethought, the prosecution must establish one of three mental states on the part of the defendant at the time of the killing: (1) intent to kill; (2) intent to commit great bodily harm; or (3) intent to create a very high risk of death or great bodily harm with the knowledge that death or great bodily harm is the probable result. *See People v. Dykhouse*, 418 Mich. 488, 495, 345 N.W.2d 150, 151 (1984); *People v. Aaron*, 409 Mich. 672, 713-14, 299 N.W.2d 304, 319-20 (1980). Certain additional elements elevate second degree murder to first degree murder, which is punishable by a mandatory term of nonparoleable life imprisonment. These include murder done with premeditation or committed in the course of certain enumerated felonies. *See* MICH. COMP. LAWS § 750.316(1)(a), (b).

Under Michigan law, "[p]remeditation is measured in time; time to permit a reasonable person to subject the nature of his response to a second look." *People v. Brown*, 137 Mich. App. 396, 407, 358 N.W.2d 592, 597 (1984). "The elements of premeditation and deliberation may be inferred from the circumstances surrounding the killing." *People v. Anderson*, 209 Mich. App. 527, 537, 531 N.W.2d 780, 786 (1995). Relevant factors include the relationship of the parties, the defendant's actions prior to the killing, the circumstances of the killing, and the defendant's conduct after the killing. *See id.*; *Brown*, 137 Mich. App. at 407, 358 N.W.2d at 597. Further, because first degree murder requires premeditation and deliberation rather than simply malice aforethought (as is required for second degree murder), the actor must have the specific intent to kill in order to be convicted of first degree murder. *See People v. Hart*, 437 Mich. 898, 898, 465

18

N.W.2d 328, 328 (1991); *People v. Dykhouse*, 418 Mich. 488, 495, 345 N.W.2d 150, 151 (1984);

*People v. Aaron*, 409 Mich. 672, 715 n.102, 299 N.W.2d 304, 320 n.120 (1980).

2.    *Analysis*

Petitioner contends that the prosecution presented insufficient evidence that he premeditated

the killing.  Rather, he contends that the evidence establishes, at most, that the shooting was done

spontaneously and in the heat of passion.  The Michigan Court of Appeals rejected this claim,

reasoning:

> In this case, defendant and Anthony Kelly did not have a prior relationship.
> Defendant did yell at Kelly after Kelly flicked his cigarette at him.  Defendant also
> waited to shoot until Kelly smiled and raised his hands.  After the shooting,
> defendant fled.  While everything happened quickly in this case, a rational trier of
> fact could have found that defendant had time to take a second look and only decided
> to kill Kelly after thinking about it.

*Scott*, 2006 WL 3374956, at *5, slip op. at 5.  The Court should conclude that this determination was

reasonable.

Although the evidence of petitioner's mental state was not particularly strong, this Court

does not reweigh the evidence.  The question before this Court is only whether the Michigan Court

of Appeals reasonably concluded that a rational trier of fact could have found that petitioner acted

with premeditation and deliberation, viewing the evidence in the light most favorable to the

prosecution.  Here, in the light most favorable to the prosecution, the evidence showed that

petitioner took offense when Kelly flicked a cigarette in his direction, and confronted Kelly about

the matter.  Only after Kelly raised his hands and smiled did petitioner pull out a gun and fire 5-6

shots at the victim at close range.  Further, Cowans testified that after firing the shots petitioner

walked up to the car and stared inside.  From this evidence, the jury could have concluded that

petitioner had the time to contemplate killing Kelly, and in fact did so.  *See People v. Gonzales*, 178

Mich. App. 526, 534-35, 444 N.W.2d 228, 231 (1989); *People v. Williams*, No. 257142, 2006 WL 954167, at *4 (Mich. Ct. App. Apr. 13, 2006). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

G. *Recommendation Regarding Certificate of Appealability*

    1. *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84. Although the substantive standard is the same, "[t]he new

Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable." *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue." FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments. In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

2.      *Analysis*

If the Court accepts my recommendation regarding the merits of petitioner's claims, the Court should also conclude that petitioner is not entitled to a certificate of appealability, for the reasons explained above. In light of the certainty of the eyewitness identifications and their opportunity to view petitioner for a significant period of time, the reasonableness of the Michigan Court of Appeals's application of clearly established Supreme Court law relating to identification testimony is not debatable. Likewise, because petitioner's ineffective assistance of counsel claim is derivative of his identification claim, the resolution of the ineffective assistance claim is not

reasonably debatable. With respect to petitioner's evidentiary claim, it is clear that the introduction of prior bad acts evidence does not violate clearly established law, and it is equally clear that the evidence was admitted for the proper purpose of establishing petitioner's identity as the perpetrator. Thus, the resolution of petitioner's evidentiary claim is not reasonably debatable. Finally, in light of the evidence at trial suggesting that petitioner had the time to, and in fact did, contemplate the killing of Kelly as retribution for Kelly having thrown a cigarette at petitioner and the deferential standards of both *Jackson v. Virginia* and § 2254(d), the resolution of petitioner's sufficiency of the evidence claim is not reasonably debatable. Accordingly, the Court should conclude that petitioner is not entitled to a certificate of appealability.

H.     *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus. If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

III.     <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the

objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


s/Paul J. Komives_____
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 5/14/10

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and  by electronic means or U.S. Mail on May 14, 2010.

s/Eddrey Butts_____
Case Manager